IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 12, 2026

## STATE OF TENNESSEE v. LEIGH ANN CHAMPION THWEATT

**Appeal from the Circuit Court for Lewis County
Nos. 2020-CR-76, 2020-CR-77, 2020-CR-92    Michael E. Spitzer, Judge**

_____

### No. M2025-01432-CCA-R3-CD

_____

The Defendant, Leigh Ann Champion Thweatt, appeals the Lewis County Circuit Court's revocation of her probation, arguing that the trial court erred in revoking her probation in full rather than allowing her to address her substance abuse issues on probation, contending that full revocation did not serve the ends of justice for the public or the Defendant. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;
Judgment of the Circuit Court Affirmed**

STEVEN W. SWORD, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Melanie Totty Cage, District Public Defender, and William J. Eledge, Assistant Public Defender, for the appellant, Leigh Ann Champion Thweatt.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Hans Schwendimann, District Attorney General; and Jennifer Mason, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.    FACTUAL AND PROCEDURAL HISTORY

The Defendant, Leigh Ann Champion Thweatt, entered guilty pleas in the Circuit Court for Lewis County on September 7, 2021, to possession of methamphetamine (a Class B felony, *see* Tenn. Code Ann. §§ 39-17-417(b), -434) in case number 2020-CR-76; possession of contraband in a penal facility (a Class D felony, *see id.* § 39-16-201(c)(2)) in

case number 2020-CR-77; and evading arrest (a Class D felony, *see id.* § 39-16-603(d)(2)(B)) in case number 2020-CR-92. She received an effective sentence of ten years and was placed on community corrections.

On November 1, 2021, the trial court filed a violation of community corrections warrant, alleging that the Defendant committed a new criminal offense, to wit: accessory after the fact for hiding a wanted individual and that the Defendant tested positive for methamphetamine on a drug screen. The Defendant admitted to being in violation of community corrections and was reinstated to her community corrections program on November 30, 2021.

On March 23, 2022, the trial court filed a second violation of community corrections warrant, alleging that the Defendant had failed to obtain employment, failed to pay her court costs, and tested positive for methamphetamine and amphetamine on a drug screen. The Defendant admitted to being in violation of community corrections. On January 24, 2023, the trial court transferred the Defendant's community corrections sentence to supervised probation and ordered her to complete a one-year residential rehabilitation program at the Warriors Center for Women (Warriors Center).

On August 16, 2023, the trial court filed a violation of probation warrant, alleging that the Defendant was discharged from her treatment program at the Warriors Center and had absconded from probation. The trial court filed an amended violation of probation warrant on June 2, 2025, alleging that the Defendant had been charged on May 23, 2025, for the offenses of possession of methamphetamine and fentanyl with the intent to manufacture, sell, or deliver, and evading arrest in Shelby County; and that the Defendant was arrested on May 24, 2025, for possession of a controlled substance with the intent to manufacture, sell, or deliver and for evading arrest in Lauderdale County. These pending violation of probation warrants were served on the Defendant on July 17, 2025, almost two years after the original warrant was issued.

On September 2, 2025, the Defendant appeared in court on the pending violations. After being sworn, the Defendant testified that she wished to waive the portion of the hearing determining if she was guilty of violating her probation rules and admitted that she was in violation. The trial court then conducted a hearing to determine the appropriate consequences for the violations.

Probation Officer Fredericka Gildersleeve testified that she had served as the Defendant's probation officer since January 2023, when the Defendant was revoked from community corrections and placed on State probation. The Defendant had been ordered as a condition of probation to enter and successfully complete a residential rehabilitation program at the Warriors Center. However, the Defendant was discharged from the program

on July 26, 2023, due to her drug use, failing a drug test, and sharing methamphetamine with another resident. The Defendant did not contact Officer Gildersleeve after being discharged. Officer Gildersleeve attempted to locate the Defendant at her last known addresses and phone numbers. After being unsuccessful in her attempts to locate the Defendant, she obtained a violation of probation warrant in August 2023 alleging that the Defendant failed to complete her treatment and had absconded.

Officer Gildersleeve had no contact with the Defendant until she learned that the Defendant had been arrested for new criminal offenses in May 2025. She obtained an amended violation of probation warrant based on the new offenses. The Defendant called Officer Gildersleeve from the Lewis County jail and told her that she left the treatment program because her child was in danger.

Special Agent Lindsey Price testified by video that she was employed as a drug investigator with the Tennessee Bureau of Investigation based in Shelby County. On May 12, 2025, the Defendant sold fentanyl to a confidential informant and arranged for the sale of methamphetamine from another individual to the same informant. A search warrant was executed on May 20, 2025, at the residence where the Defendant had previously sold the fentanyl. Methamphetamine was discovered during the search; however, the Defendant was not located. It was later determined that the Defendant had been hiding in the attic during the search. The drug charges were subsequently dismissed, and the Defendant pled guilty to evading arrest. Special Agent Price acknowledged that the amount of drugs found in the home could have been consistent with personal use.

The Defendant testified that her children had been placed in the custody of their paternal grandmother in 2019. She stated that the grandmother prevented her from visiting her children, although she had been permitted supervised contact. The Defendant stated that when she was discharged by the Warriors Center, she was told to return in three days. During this period, she encountered her children at the mall. The children told her that their grandmother was "beating them" and that they were being sexually abused. The Defendant reported the abuse to the Department of Children's Services (DCS). She stated that she was present at every DCS hearing by phone. However, she did not report her location because she was "on the run." She testified that she did not go back to her rehabilitation program because her "babies needed [her] as a mother."

The Defendant admitted that she relapsed while in treatment at the Warriors Center by using methamphetamine, which had been her drug of choice since 2018. She also acknowledged that she failed to successfully complete the program. The Defendant testified that she used fentanyl for the first time in a suicide attempt. She admitted that she provided fentanyl to the confidential informant but denied selling it to him. The Defendant averred that she had pled guilty to misdemeanor evading arrest in Shelby County, that her

other charges were dismissed, and that she had been referred to the Hart Center for substance abuse treatment. She maintained that the felony drug charges were dropped due to "a lack of evidence." However, she acknowledged that she did not contact her probation officer because she was "on the run" and "already had a warrant."

After hearing arguments from the parties, the trial court found that the Defendant violated the terms of her probation based on her waiver of the right to a hearing and statements acknowledging the violation. The trial court then proceeded to consider the appropriate disposition in response to the violation. The trial court indicated that the Defendant's personal home life was "bear[ing] fruit." The Defendant had "issues" that led her to attempt suicide and to "get back into the drug selling business." The trial court further found that the Defendant did not "have the tools necessary to function on probation or the ability to advance under rehab situations," was a risk to herself, and was a risk to others. Therefore, the trial court ordered the full revocation of the Defendant's probation and that she serve the remainder of her sentence in custody. This timely appeal followed.

## II. ANALYSIS

On appeal, the Defendant argues that the trial court abused its discretion by ordering full revocation rather than reinstating her to probation with additional treatment. She asserts that her misconduct stemmed from substance-abuse issues, that she had been referred for treatment in Shelby County, and that less-severe alternatives were available. The State responds that the trial court did not abuse its discretion in fully revoking the Defendant's probation. We agree with the State.

Probation revocation proceedings involve two determinations: first, the trial court must determine, by a preponderance of the evidence, whether the defendant has violated a condition of his or her probation such that revocation is warranted; and if so, what consequences should apply upon revocation. *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022). Both determinations are discretionary; as such, we review both determinations for an abuse of discretion accompanied by a presumption of reasonableness, so long as the trial court places sufficient findings and its reasoning in support of its decisions for both prongs on the record. *Id.* at 758-59. There are two categories of probation violations—technical and non-technical—and the consequences available to the trial court for imposing upon a defendant who violates the terms of his or her probation vary depending on the type of violation. Tenn. Code Ann. § 40-35-311(e)(1), (2); *State v. Rand*, 696 S.W.3d 98, 103 (Tenn. Crim. App. 2024). As relevant here, non-technical violations include a defendant's absconding from probation or his or her commission of a new felony or Class A misdemeanor. Tenn. Code Ann. § 40-35-311(e)(2). Upon finding, by a preponderance of the evidence, that a defendant has committed a non-technical violation of his or her

probation, the trial court may fully revoke the defendant's probation. *Id*.; *Rand*, 696 S.W.3d at 103-04.

The Defendant does not challenge the finding that she violated her probation; the only question is whether the trial court abused its discretion in ordering full revocation. Since her violations were non-technical in nature, the trial court had statutory authority to impose full revocation. *See* Tenn. Code Ann. § 40-35-311(e)(2). Furthermore, the Defendant does not argue that the trial court failed to set forth sufficient findings and reasoning on the record in support of its decision to order full revocation. Thus, the trial court's decision is presumptively reasonable. *See Dagnan*, 641 S.W.3d at 757.

The Defendant argues that the trial court abused its discretion in fully revoking her probation for the following reasons: 1) she specifically requested to be allowed to attend a long-term rehabilitation program; 2) her prior criminal history was primarily drug-related; 3) she had been referred to a rehabilitation program by a Shelby County court; 4) the trial court focused on her childhood circumstances rather than her ongoing drug-related circumstances; and 5) the trial court had other, less severe, consequences available.

To establish an abuse of discretion, a defendant must show that the trial court applied an incorrect legal standard, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that caused him or her an injustice. *State v. Davis*, 466 S.W.3d 49, 61 (Tenn. 2015). In determining the appropriate consequences for a probation violation, our supreme court has indicated that trial courts may consider, but are not limited to, the number of revocations, the seriousness of the violation, prior criminal history, and the defendant's character. *Dagnan*, 641 S.W.3d at 759 n.5.

Assuming each of the Defendant's above-listed arguments to be true, she would still not be entitled to relief. Although not the only option available to the trial court, full revocation was legally permissible. The Defendant was given multiple opportunities for rehabilitation in the community. She was given two chances to complete community corrections and one chance to complete probation. She was given an opportunity to complete an intensive residential substance abuse program. When she relapsed, she chose to abscond for two years and committed new criminal offenses. Based on these circumstances, the trial court chose to revoke the Defendant's probation in full and ordered her to serve the remainder of her sentence in custody. Although the Defendant emphasized her substance-abuse disorder and desire for treatment, a trial court is not required to continue offering alternatives when previous opportunities have been unsuccessful. The trial court's findings were specific, grounded in the evidence, and well within its discretion. The Defendant has failed to show that the trial court abused its discretion.

### III. CONCLUSION

Following our review of the record and based upon the foregoing analysis, we affirm the judgment of the trial court.

_s/ Steven W. Sword_

STEVEN W. SWORD, JUDGE